**NOT FOR PUBLICATION OR CITATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**NORTHERN DIVISION** at **ASHLAND**

CIVIL ACTION NO. 07-CV-54-HRW

STEVE CALLAHAN, JR.                                    PETITIONER,

VS:                    <u>**MEMORANDUM OPINION AND ORDER**</u>

BRIAN J. PATTON,                                       RESPONDENT.

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Petitioner Steve Callahan, Jr., who is in the custody of the Federal Bureau of Prisons ("BOP") and confined in the Federal Correctional Institution in Ashland, Kentucky, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, and has paid the district court filing fee.

This matter is before the Court for screening. 28 U.S.C. §2243; *Harper v. Thoms*, 2002 WL 31388736, *1 (6th Cir. 2002). During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). As Petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

Petitioner challenges his conviction in a prison disciplinary proceeding for drug use on the ground that the BOP violated Program Statement ("P.S.") 6060.08, which requires a 30-day lapse of time between urine collections before disciplinary proceedings can be initiated.

ALLEGATIONS

The petitioner has submitted a partially completed common petition form, an attached typewritten petition, and Exhibits designated (A) - (K). The following is a summary or construction of the contents of these documents.

Callahan begins with his conviction on possession of narcotics with intent to distribute, in violation of 21 U.S.C. §841, in the United States District Court for the Eastern District of Michigan. On August 31, 2005, he was sentenced to seventy (70) months' imprisonment, and on November 1st or 4th of 2005,[1] he self-surrendered to the custody of the BOP at the Federal Correctional Institution ("FCI") in Memphis, Tennessee.

Petitioner has attached a BOP health history form which shows his signature and the date on which he signed it, November 1, 2005. In it, he admits to drinking alcohol and smoking marijuana on October 31, 2005, purportedly before this entry into FCI-Memphis. Exhibit [hereinafter "Ex."] (A). On November 4, 2005, he was

---

[1] Petitioner uses the November 4th date in paragraph 4 of his self-styled typewritten petition but gives the November 1st date in the very next paragraph, ¶ 5. Although not necessary to the disposition herein, the Court notes that Callahan's Exhibit (F) is a BOP print-out which shows November 1, 2005, as the date of the petitioner's end of in-transit status and entry into his assigned facility.

2

required to give a urine specimen at the prison, and on November 9th, the laboratory which analyzes specimens for the BOP reported that his November 4th specimen "tested positive for Cannabinoids/THC Metabolite."

Accordingly, Callahan was immediately put into the administrative segregation housing unit and an incident report was written, charging him with use of narcotics. Ex. (B). The charging document shows that the petitioner's comments upon being presented with the report were, "Have not done any drugs at the camp. Used drug 10-31-05 self surrender 11-01-05." *Id.* A hearing on the charge was had before a Disciplinary Hearing Officer ("DHO") on November 22, 2005, at which time the petitioner again admitted to smoking marijuana and again insisted that he did so prior to entry to the prison. He also called a witness, another inmate, who testified that Callahan told him that he smoked the marijuana before he came to the prison.

In the DHO's Report, Petitioner was found guilty as charged based upon this admission of use, his medical records showing no prescription medications which would result in the laboratory's finding, the laboratory's written report, and the chain of custody of his urine specimen. Ex. (E). Callahan was sanctioned with the loss of 41 days of good conduct time; 30 days in disciplinary segregation; and the loss of one year of visiting privileges, to be followed by one year of visitation limited to only immediate family members. Additionally, the DHO recommended a disciplinary transfer.

Callahan received the Report on November 30, 2005.  He did not immediately appeal the conviction.  He claims that this is because he remained in disciplinary segregation, where he did not have access "to staff or litigation materials required to initiate administrative grievance" on the claim herein, *i.e.*, that his liberty has been affected in the disciplinary proceedings in which the BOP did not comply with its own policy, P.S. 6060.08.  On February 6, 2006, he was removed from FCI-Memphis as the first step in a transfer and he was in transit until February 27, 2006, when he arrived at his current prison assignment.

On March 13, 2006, Petitioner alleges, he initiated the administrative remedy process to challenge the conviction, Remedy No. 409002, but he does not provide a copy of the document which he purportedly submitted.  He does state that his appeals were rejected at every level of the BOP's administration, and he provides copies of the BOP's responses, all denying relief based on the untimeliness of his beginning the administrative appeal process.

Callahan does attach the April 5, 2006  response of the Regional Director to his appeal (Ex. (G)).  It shows that the Regional Director received his appeal on March 23 [rd] and that the appeal was rejected on three grounds.  The grounds were the petitioner's failure to sign his appeal, his failure to submitted the proper number of continuation pages, and:

> YOUR APPEAL IS UNTIMELY.  REGIONAL APPEALS (BP 10) MUST BE RECEIVED WITHIN 20 DAYS OF THE WARDEN/CCM RESPONSE OR RECEIPT OF THE DHO REPORT.  THIS TIME INCLUDES MAIL TIME.

4

Ex. G.   Petitioner responded to this decision with several arguments,[2] two of which appear in the instant petition.  The first was that he could not appeal earlier because he "was confined to Special Housing," and the second was the claim itself, *i.e.*, that the conviction was unlawful because P.S. 6060.08 was violated.  *Id.*

On June 1, 2006, the Regional Office again responded that the appeal was untimely, with the exact same language as quoted above, and this time it also added the following:  "P.S. 1330.13 SUBMIT WRITTEN VERIFICATION FROM STAFF FOR YOUR DELAY IN SUBMISSION."  Ex. (H).  Petitioner attaches a copy of his later cover letter which he wrote to the Regional Office wherein he states that he has attached documentation about "the period of detention and transit," which purportedly explains that the delay in appealing was not his fault.  Ex. (G), dated July 11, 2006.

The only document which the petitioner has provided herein to support his claim that he could not start an appeal while in segregation or in transit is Exhibit (F).  It is a one-page BOP print-out showing that the petitioner was, indeed, in transit from February 6, 2006, to February 27, 2006.  No attachment to the instant petition, however, goes to the earlier period of time, from the date on which he learned of the conviction, November 30th, until he left FCI-Memphis, February 6th, when the petitioner contends that

_____

[2] Again, it is interesting to note that Callahan also argued that the smoking of the marijuana was "not a violation of institutional policy, but rather possible violation of condition of release, outside the scope of [the DHO's] authority to sanction." Ex. (G).  This is the petitioner's second attachment suggesting that he was under some type of drug restrictions prior to his arrival at FCI-Memphis on November 1, 2006.

he was in segregated detention and unable to begin his appeal from there.

Perhaps Callahan submitted only the same print-out to the Regional Office, as the Regional Director's response this time contained the same exact language about the untimeliness of the appeal, and then added:

> DHO RPT IS SIGNED/DATED 11-30-2005.   YOU WERE NOT IN TRANSIT UNTIL 2-6-2006.   THERE IS NO MENTION F/ STAFF ABOUT YOUR PROPERTY.   UNTIMELY REJECTION UHPELD [sic]

Ex. (I), dated August 2, 2006.  On August 18, 2006, the petitioner appealed the Regional Director's decision to the BOP's National Office (Ex. (J)), and on September 8, 2006, that Office rejected the appeal on the timeliness issue, additionally writing, "WE CONCUR WITH THE REGION'S RATIONALE FOR REJECTING THIS APPEAL." Ex. (K).

Eight months later, on May 21, 2007, Callahan filed the instant petition, claiming that he exhausted the administrative remedy process; theorizing that he is entitled to relief for the BOP's failure to comply with its own policy in P.S. 6060.08; seeking restoration of the lost good conduct time credits and privileges; and further, asking that his records be amended to eliminate the conviction.

<u>DISCUSSION</u>

Prisoners who seek relief under 28 U.S.C. §2241 are ordinarily required to exhaust administrative remedies before filing a habeas action in district court. *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam); *United States v. Cobleigh*, 75 F.3d

6

242, 251 (6th Cir.1996)); *Sesi v. United States Bureau of Prisons*, 238 F.3d 423, 2000 WL 1827950 (6th Cir. (Mich.) December 7, 2000) (Table) (Unpublished Deposition) (a federal prisoner must first exhaust his available administrative remedies before filing a §2241 petition); *United States v. Oglesby*, 52 Fed. Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir.2002) (citing *United States v. Wilson*, 503 U.S. 329, 335 (1992)).

The exhaustion requirement generally is required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review. *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

The petitioner's arguments to the contrary, the matter of whether to require exhaustion in a §2241 habeas proceeding such as this is not within the scope of the Civil Rights of Institutionalized Persons Act, at §7. Rather, exhaustion is a judicially created requirement for §2241 petitions and the judiciary may waive the requirement. In *Colton v. Ashcroft*, 299 F.Supp.2d 681 (E.D.Ky. 2004), the Honorable Jennifer B. Coffman, of this Court, stated as follows on the subject of exhausting judicially created remedies:

> Only after a federal prisoner seeking § 2241 relief has sought and exhausted administrative remedies pursuant to 28 C.F.R. §§ 542.10-16 (1997) (and not pursuant to PLRA provision § 1997e(a)) may the prisoner then seek § 2241 judicial review. *United States v. Oglesby*, 52 Fed.Appx. 712, 714, 2002 WL 31770320 *2 (6th Cir. 2002) (citing

7

> *United States v. Wilson*, 503 U.S. 329, 335, 112 S.Ct.
> 1351, 117 L.Ed.2d 593 (1992); *United States v. Cobleigh*,
> 75 F.3d 242, 251 (6th Cir.1996)).   The exhaustion of
> administrative remedies procedure required of a § 2241
> petitioner is not a statutory (PLRA) requirement, but
> instead, is a wholly judicially created requirement. *See*
> *Wesley v. Lamanna*, 27 Fed.Appx. 438, 2001 WL 1450759 (6th
> Cir. 2001).

*Id.* at 689.   *See also Davis v. Keohane*, 835 F.2d 1147 (6th Cir.

1987); *Manakee Professional Medical Transfer Service, Inc. v.

Shalala*, 71 F.3d 574 (6th Cir. 1995).   The initial question,

therefore, is whether the instant petitioner properly exhausted the

matter administratively, and if he did not, the question is whether

to forgive the lack of exhaustion.

The Court begins with the administrative remedy provisions

which federal prisoners must complete before filing a 28 U.S.C.

§2241 petition.   They are set forth in 28 C.F.R. §§542.10-16

(1997).   As the instant petitioner was told repeatedly, an inmate

must submit an appeal (BP-10 form) to the appropriate regional

director within 20 calendar days of the date that he was denied

relief at the institution; and if dissatisfied with the response of

the Regional Director, then he may submit an appeal (BP-11) to the

office of the BOP's General Counsel.

Petitioner Callahan has followed these steps but not in a

timely manner, as the regulations require.   As stated *supra*, one of

the reasons for the exhaustion of administrative remedies

requirement is to prepare a record for the Court.   *See Brice v.

Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980),

and the instant petitioner has presented only pieces of a record.

Important to any review by this Court is when and what he wrote in

his first appeal to the Regional Director, but he does not attach a copy of it.  Similarly, he claims to have documents supporting his purported inability to begin the appeal from November 30, 2005, to February 6, 2006, a vital issue, but he has not supplied them to the BOP or to this Court.

On the record which Petitioner has presented, the Court finds that he did not properly exhaust his administrative remedies because, without a demonstrated excuse, he did not begin the appeal of his disciplinary conviction in a timely manner.  Therefore, the BOP could and did refuse to address the merits of his challenge and this Court may dismiss the case on this ground.  The United States Court of Appeals for the Sixth Circuit has explained as follows:

> If a habeas corpus court were to allow a prisoner to simply wait until the time prescribed by the regulations for filing his appeal has expired and then file a petition for a writ of habeas corpus which a habeas corpus court would consider on its merits, the doctrine of exhaustion of administrative remedies would be circumvented.

*Marchesani v. United States Parole Commission*, 940 F.2d 661, 1991 WL 153131 at *2 (6th Cir. 1991) (unpublished).

The exhaustion fact pattern herein is virtually on all fours with that in *Smaragdas v. DeRosa*, 2006 WL 477029 (D.N.J. 2006) (not reported in F.Supp.2d), the prisoner therein having not timely filed his appeal within the 20-day requirement upon his release from disciplinary segregation and the BOP relying on its untimeliness as the reason to deny relief.  The District Court wrote that such a "procedural default in pursuing administrative remedies bars judicial review of a subsequent habeas corpus

petition, absent the prisoner's demonstration of cause and prejudice for the default." *Id.* at *4. As did the Court in that case, this Court finds that the petitioner in this case has failed to demonstrate cause for the procedural default and the Court will dismiss the current petition on this ground.

However, as in *Smaragdas*, even were exhaustion completed or excused, the Court would deny the claim herein as it does not merit relief. The petitioner's claim is frivolous. *See Amerson v. Samuels*, 2005 WL 1223427 (E.D.Ky. 2005) (not reported). The Court takes judicial notice that the vehicle for any BOP policy is what is called a program statement, and the one referenced herein is P.S. 6050.08, *Urine Surveillance and Narcotic Identification*, which is attached as Exhibit (D). On this exhibit, the petitioner highlights four sentences regarding appropriate waiting periods for successive urine tests after earlier positive results. On P.S. 6060.08's Attachment B, at page 1, he highlights the 30-day detection period for THC and the following sentence, "For example, ordinarily at least 30 days must elapse between urine collection dates before disciplinary action may be taken for a second THC positive." Petitioner claims that this was violated because his urine test was demanded and performed before the lapse of 30 days.

First, the Court notes that the above-quoted provision does not appear relevant to the situation which the petitioner has alleged, *i.e.*, an initial urine test soon after entry into a BOP facility. Second, even were this portion of the program statement applicable and even were it violated, the federal courts have

routinely held that "[t]he BOP's program statements are internal agency interpretations of its statutory regulations." *Parsons v. Pitzer*, 149 F.3d 734, 738 (7th Cir. 1998); *see also Koray v. Sizer*, 21 F.3d 558, 562 (3d Cir. 1994), *rev'd on other grounds sub nom.*, *Reno v. Koray*, 515 U.S. 50 (1995) ("The Bureau's interpretation is recorded in its 'Program Statements,' which are merely internal agency guidelines and may be altered by the Bureau at will.").

The BOP's program statements do not create a federal cause of action for a prisoner but instead serve as internal guidelines. *See Miller v. Henman*, 804 F.2d 421, 426 (7th Cir. 1986). Therefore, even if the petitioner were correct that his proceedings violated these BOP regulations, procedural shortcomings in following both policy and regulations "are not of constitutional import. . . . [A] prisoner must show that his continued custody is a violation of the Constitution, and the violation of an administrative rule is not the same thing as a violation of the constitution." *Williams v. Scibana*, 2004 WL 1774739 (W.D. Wis. 2004) (not reported) (quoting *White v. Henman*, 977 F.2d 202, 295 (7th Cir. 1992)). In short, the petitioner has failed to state a claim upon which relief may be granted.

<u>CONCLUSION</u>

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) Steve Callahan, Jr.'s petition for writ of habeas corpus is **DENIED**;

(2) this action will be **DISMISSED**, *sua sponte*, from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This the 4th day of June, 2007.



**Signed By:**

***Joseph M. Hood***

**United States District Judge**

12